ALICE HIRSH, as Administratrix of the Estate of IRVING S. HIRSH, Deceased, Respondent-Appellant, v. STATE OF NEW YORK, Appellant-Respondent. (Claim No. 32311.) — Appeal by the State from a judgment of the Court of Claims, awarding to claimant the sum of $25,512.36, with interest, for the suicidal death of decedent while a mental patient at Brooklyn State Hospital. The decedent had suicidal tendencies, a fact that was known to the State hospital authorities. It was known for instance that he had attempted to take his life while a patient at High Point Hospital by taking an indeterminate number of phenobarbital tablets; and on another occasion he attempted suicide by hanging. Decedent's suicide was accomplished through the ingestion of an overdose of barbiturates known as seconal. An autopsy was performed which disclosed the presence of at least 19 grains of this drug in his body after death; and there is expert testimony to the effect that he took a dose of from 12 to 15 capsules, assuming each capsule to contain a grain and a half of seconal. The record is devoid of proof as to how the drug came into his possession. The rationale of the trial court's decision, for the most part, is to the effect that however he procured the drug the authorities at the hospital were negligent in failing to discover that he had it; and the court also found in connection therewith that the employees of the hospital failed to keep the decedent under proper surveillance, in accordance with accepted standards, and specifically failed to adequately inspect his clothing and bedding. We think the trial court's findings were justified by the evidence. It is well settled that the State is liable for the failure of its hospital personnel to take reasonable and necessary precautions to protect mental patients from self-inflicted injuries. Each case must be decided on its own merits but the rule is clear (*Van Patter* v. *Towns Hosp.*, 246 N. Y. 646; *Piage* v. *State of New York*, 245 App Div. 126; *Martindale* v. *State of New York*, 269 N. Y. 554). We do not regard the award as inadequate, and the trial court properly refused, in our opinion, to make an award for pain and suffering. The testimony indicates that death from an overdose of seconal is practically painless. Judgment affirmed, with costs. Foster, P. J., Gibson, Herlihy and Reynolds, JJ., concur; Bergan, J., dissents in the following memorandum: There is a vast difference between the facts in this case and a demonstrated failure of a hospital to take reasonable and necessary precautions to protect a mental patient with suicidal tendencies from self-injury. There is no

proof that the procedures followed for the protection of the decedent as a potential suicide did not meet reasonable standards; and there is an entire absence of any proof of actual negligence by the hospital in the facts leading to the suicide. All the patient's clothing was removed and locked up when he went to bed; he was given a pair of shorts in which to sleep; there was inspection of the bed before he slept; no container or box in which drugs might have been secreted was found in the vicinity of his bed by the physician called to examine him after his death; the hospital's supply of drugs was kept in an entirely separate part of the building, and doors from the ward in which decedent stayed to the room where drugs were kept, were always locked; and drugs of the type he used were not kept in the hospital. Even after careful study by doctors, lawyers and judges of the facts of the case, no one has been able to suggest a plausible means by which decedent obtained and secreted the drugs he used. To hold the State liable it is necessary to say that the hospital should have anticipated and prevented before the event, a means of getting and secreting drugs which, after the event, remains wholly unexplained. It is a far-fetched argument to say, as the respondent does, that a sleeping patient should be awakened at short intervals through the night to make sure he has not drugged himself. Unless we are willing to hold the State negligent no matter how the decedent got the drugs — whether reasonable care would have discovered he had gotten them or not — a case of liability is not made out. Even if it were conceivable that the doctrine of *res ipsa loquitur,* which is inappropriate to this kind of a case, could apply here, the proof by the State of reasonable precautions taken in the hospital to prevent suicide would fully meet the bare prima facie showing that such a doctrine would import. To say the State is liable on this record is to hold it to be a guarantor against all possible hospital miscarriages whether reasonable care was used or not. The judgment should be reversed and the claim dismissed.